United States District Court
Southern District of Texas

**ENTERED**

November 06, 2019

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-14-48-1 |
| | § | CIVIL ACTION NO. H-17-3734 |
| REBECCA LEE RABON, | § | |
| | § | |
| Defendant-Movant. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Rebecca Lee Rabon's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No.155),[1] the United States' Amended Response (Document No.169), Declaration Under Oath of Counsel (Sealed Document No. 164), and Movant's Reply (Document No.172). After reviewing Movant's § 2255 Motion, the Government's Answer, Counsel's Sworn Declaration, Movant's Reply , the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Movant Rebecca Lee Rabon's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 155) be DENIED.

**I.    Procedural History**

Movant Rebecca Lee Rabon  ("Rabon") who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C.§ 2255.  This is Rabon's

---

[1] Rebecca Lee Rabon's  Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-17-3734 and at Document No.155  in Criminal Action No. H-14-48. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

first attempt at § 2255 relief.

On January 30, 2014, Rabon and Tiffany Nicole Thompson were charged by Indictment. (Document No. 1). Rabon was charged with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349 (Count 1), health care fraud, aiding and abetting, in violation of 18 U.S.C. § 1347 and 18 U.S.C. § 2 (Counts 2-37), mail fraud, in violation of 18 U.S.C. § 1341 (Counts 38-42), aggravated identity theft, in violation of 18 U.S.C. § 1028A (Counts 43 & 44). The Indictment included a Forfeiture Notice. On March 20, 2015, Rabon pleaded guilty to Counts 1, 20, 29, 31, 34, and 37, pursuant to a written Plea Agreement. (Document No.55; Transcript of Rearraignment, Document No. 145). The written Plea Agreement is signed by Rabon and was discussed at the Rearraignement. The signed written Plea Agreement makes clear that Rabon "is pleading guilty freely and voluntarily" (Document No. 55, ¶ 29), and contains an Addendum, also signed by Rabon, that states that she: "consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand this Agreement and I voluntarily agree to its terms." (Document No. 55, p. 16). Moreover, the transcript of the Rearraignment hearing confirms that Rabon understood the general terms of the plea agreement, the charges against her, the elements of the crimes, the rights she would give up if she pleaded guilty, the possible penalties, the sentencing process, that she had discussed the plea agreement with her attorney and that she understood the terms, and that she was waiving both her right to appeal and to collateral review except for claims of ineffective assistance of counsel. (Document No. 145, p. 4-17).

2

The record further reflects that the Government summarized the facts that it was prepared to prove if the case proceeded to trial. (Document No.145, p. 18-21). In response, Rabon confirmed the accuracy of the summary and her role in the offense. (Document No. 145, p. 21-22). The Prosecutor summarized the facts as follows:

> The defendant is a licensed speech therapist in the State of Texas; she was the owner and operator of Rabon Communication Enhancement, which is located in Sugarland, Texas, and provided speech therapy to children;
>
> The Defendant herself provided speech therapy and signed therapy treatment notes;
>
> She also performed and signed speech therapy evaluations;
>
> The defendant also cosigned evaluation and therapy progress notes to the speech therapist working at her business under her supervision;
>
> The defendant knew through her education and training that the patients at her clinic did not need what is referred to as CPT Code 92526, which is the treatment code for dysphasia, swallowing and oral feeding dysfunction;
>
> The defendant knew that her clinic did not have the equipment or supplies to provide those treatments, and the defendant also knew that neither she nor any speech therapists at her clinic provided those treatments between March 29th of 2009 and November 11, 2013;
>
> The defendant worked together and had an agreement with an individual by the name of Tiffany Nicole Thompson, who was the office manager at her clinic;
>
> Her agreement was to submit claims to insurance providers to obtain money for services that were not medically necessary and not provided;
>
> To hide, prevent and delay discovery of their fraud, the defendants, Rabon and Thompson, created a scheme to TRICARE false therapy progress notes;
>
> Pursuant to their agreement, Thompson knowingly submitted false and fraudulent claims that did not reflect the actual treatment needed and provided to children.
>
> Your Honor, in relation to Count 20, 29 and 31, I'm going to summarize the facts in the plea agreement.

3

\*                         \*                         \*

These are counts that the defendant is pleading guilty to. Each one is a false and fraudulent claim for dysphasia services under CPT code 92526. These services were not provided by the defendant and they were billed with knowledge that the services were not provided;

The defendant knew that each child referenced in Counts 20, 29 and 31, did not need to give those services because she reviewed and signed the speech evaluations for each child;

She reviewed and signed the therapy progress notes for each child, and she also personally performed one of the evaluations on one of the children;

\*                         \*                         \*

In relation to Count 34, Your Honor, this is [a] false and fraudulent claim for an employee of the defendant, a speech therapist;

The defendant knew that her employee, the speech therapist, was not a patient at her clinic and did not receive the services that were billed;

The defendant and Ms. Thompson submitted a total of $110,550 in false and fraudulent treatment claims for that employee;

They also sent a letter to Blue Cross and Blue Shield of Texas changing the address to which Blue Cross and Blue Shield of Texas sent the health benefit statement for their employee. The address was changed from the employee's address to the defendant's address so that the employee would not know that these claims had been submitted under her insurance.

\*                         \*                         \*

Count 37 is specifically for a claim for CPT Code 92526, dysphasia treatment for the defendant herself.

The defendant submitted $925,140 in false and fraudulent claims to Blue Cross and Blue Shield for treatment services that were not provided to herself, her co-defendant, and three of her employees;

The three speech therapist employees had no knowledge that the defendant, their employer, had submitted those claims to their employee treatment plan;

4

> In total, Your Honor, the defendant submitted at least $3,784,642 in false and fraudulent claims to TRICARE and Blue Cross Blue Shield and received a little over $1.2 million as payment for those claims.

(Document No. 145, p. 18-21).   The record further shows that Rabon described her role in the offense as follows:

> The Defendant: Yes, Your Honor.  I had my own speech pathology business and claims were submitted that services were not rendered from my office.
>
> The Court:  Pretty much what Ms. Redlinger told us?
>
> The Defendant:  Yes.

(Document No. 145, p. 21-22).

Prior to sentencing, a Pre-Sentence Investigation Report ("PSR") was prepared.  (Document Nos. 77, 78).  Rabon filed written objections to the PSR (Document No.75).[2] With respect to calculating her guideline sentence, Rabon had a base offense level of 6. The offense level was increased by 18 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(J), because the intended loss of $3,956,737 was more than $2.5 million but less than $7 million.  Because Rabon was convicted of a Federal health care offense involving a Government health care program (Tri-Care),  and the amount of loss was more than a $1 million dollars, the offense level was increased by two levels pursuant to U.S.S.G. § 2B1.1(b)(7)(A) and (B)(i). Because the offense involved a violation of a prior specific judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines, pursuant to U.S.S.G. § 2B1.1(b)(11)(C)(I),  the offense level was increased by two

---

[2] The record shows that Rabon raised several objections to  calculation of her advisory guideline sentence.  Rabon objected  to the loss of three points for acceptance of responsibly, the two level leadership role enhancement, the loss amount calculation, and the  two level enhancement for a $1 million loss to a Federal Program.  She also objected to the PSR not taking into consideration her long standing history of mental health related issues and history of substance abuse.

levels. Because Rabon abused her position of trust when she stole the identities of employees who had trusted her with their confidential information, pursuant to U.S.S.G. § 3B1.3, the offense level was increased by two levels. With an adjusted offense level of 34, and with a criminal history category of I, Rabon had an advisory guideline sentencing range of 151 to 188 months.

On October 9, 2015, Rabon was sentenced to a term of imprisonment of 120 months as to Counts 1, 20, and 29, to be followed by a consecutive sentence of 31 months imprisonment as to Counts 31, 34, and 37, for a total term of 151 months, to be followed by three year concurrent terms of supervised release, a $600.00 special assessment, and restitution totaling $1,313,931.41. (Transcript of Sentencing Hearing, Document No. 134, p. 64-71). In imposing Rabon's sentence, the Court stated:

> Rebecca Rabon is before the Court this afternoon for sentencing after entering a plea of guilty Count 1, conspiracy to commit health care fraud, and five counts of health care fraud pursuant to plea agreement. The evidence revealed that she was the owner of RCE, and oversaw the operation of RCE. She employed Tiffany Thompson as th office manager of RCE. The two women conspired together to commit claims to insurance providers to obtain money for services that were not medically necessary and not provided.

> They submitted at least $3,989,470—I'm sorry, 437,000 dollars—in false and fraudulent claims, and received at least $1,297,644.71 for those claims. They are held accountable for being convicted of a federal health care offense involving a government health care program, and the loss to that program was more than one million dollars.

> Additionally, Ms. Rabon is responsible for billing $58,300 and receiving $16,286.70 while she was on pretrial release for the incident offense. Those claims were submitted after she had been instructed by the United States — by the United States Magistrate Judge [Frances] Stacy not to submit anymore claims. As a result she's held accountable for submitting a total of $3,956,737 and receiving a total of $1,313,931.41, and not assessed a reduction for acceptance of responsibility.

> She is – she was assessed an aggravating role in an offense that involved two participants because she was the organizer, leader, and manager, or supervisor, and

6

she hired Ms. Thompson.

Additionally, she abused the position of trust when she stole the identities of the employees who worked at RCE. Her position of trust facilitate the commission of and the concealment of the offense. She was able to have the EOBs for the employees sent to her address, rather than the employee's addresses, without their knowledge or consent.

Her only other conviction occurred in or around 2006 for a D.W.I. She was sentenced to probation. Based on her limited criminal history, and the high—the guideline range, and total sentence at the low end of the guidelines, I believe, is—is appropriate. This takes into account her conduct in the instant case, her behavior while on pretrial release, and appropriately sanctions her activities.

I do not believe a downward departure or a downward adjustment is necessary under the factors of 18 United States Code, Section 3553(a), which instructs the Court to impose a sentence sufficient but not greater than necessary when considering the nature and circumstances of the offense, and the history and characteristics of the defendant. Although, it's obvious that Ms. Rabon's childhood was a nightmare, and her subsequent behavior has been [] living out that nightmare, nevertheless, she is an intelligent woman of great ability, who has – has done some incredibly good things in her past in terms of her speech therapy work, and I take none of that away from her. She also has obviously been extremely traumatized by her childhood, and I take nothing away from that. But, if you put those two things together, there is still the fact that she – she used her intelligence to come up with a scheme that defrauded in millions—in the millions of dollars, or over a million dollars, actually received over a million dollars, from this scheme. And I–I don't think that I could say that whatever mental health issues she has, were the reason why she did this crime. It may have been the reason why she did this crime. It may have been the reason why she drank, may have been the reason why she put on a lot of weight, may be the reason why she did all of–all of it, the obviously bad choices that she made, yes. But this choice was not a bad choice. It is not a bad choice to defraud people. You have got to have intelligence, and enough savvy to figure out how to do it, and to do it. I mean, it is not an easy crime to commit. It's—it's just not.

So I do not believe that I can say that this crime was committed because Ms. Rabon was traumatized as a child. I mean, she was. She obviously acted out from that trauma, but this crime is separate. I can't see how this crime is part of her–her problems with her mental—mental-illness issues.

(Document No. 134, p. 64-67). Judgment was entered on October 28, 2015. (Document No. 105).

Rabon appealed to the Fifth Circuit United States Court of Appeals. Rabon argued that the

Government breached the plea agreement by opposing her objection to the lack of an adjustment for acceptance of responsibility. The Fifth Circuit rejected Rabon's argument. The Fifth Circuit wrote: "[t]he probation officer did not conclude that Rabon had accepted responsibility and did not recommend and adjustment for acceptance of responsibility. Accordingly, the conditions that would have triggered the Government's obligation not to oppose Rabon's objection to the lack of such an adjustment was not met." (Document No. 153). Rabon did not seek certiorari review by the United States Supreme Court. Her conviction became final on or before March 6, 2017. On December 11, 2017, Rabon timely filed the instant § 2255 motion. (Document No. 155).

## II. Discussion

Rabon raises fourteen claims of ineffective assistance of counsel. The Government has responded and argues that counsel's performance did not fall below that of *Strickland v. Washington*, 466 U.S. 668 (1984). The Magistrate Judge agrees.

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id.* at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-88. The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id.* at 694-95. Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

In *Hill v. Lockhart*, 474 U.S. 52, 57 (1985), the Supreme Court held that the Sixth amendment right to counsel extends to the plea-bargaining process.  The Supreme Court held that the *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Id.* at 58. With respect to the prejudice inquiry in the guilty plea context, the Supreme Court in *Hill* opined that a defendant must show"that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 162-63.  During the 2017 term, the Supreme Court in *Lee v. United States*, ___U.S.___, 137 S.Ct. 1958, 1966 (2017), instructed that such a review should be "a case-by-case examination of the totality of the evidence"  and to look at contemporaneous evidence.   *Id.* at 1966.  The Supreme Court wrote:

> "Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed. 2d 634 (1979).  Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.   Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

*Id.* at 1967.

"We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)).  Conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition. *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

With respect to ineffective assistance of counsel claims, the Court in *Harrington v. Richter*, 562 U.S 86, 131 S.Ct. 770, 778 (2011) observed that "[t]here are, [ ] 'countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.' Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Id.* at 788-89 (quoting from *Strickland*, 466 U.S. at 689). As a result, counsel's performance does not fall below that guaranteed by the Sixth Amendment where it can be shown that counsel formulated a strategy that was reasonable at the time and balanced limited resources with effective trial tactics and strategies. *Harrington*, 131 S.Ct. at 789. "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 131 S.Ct. at 791. Moreover, "it is difficult to establish ineffective assistance when counsel's *overall* performance indicates active and capable advocacy." *Harrington*, 131 S. Ct. at 791 (emphasis added).

Rabon, through grounds 2 and 14, claims that counsel, Mr. Eastepp, was ineffective for failing to discuss, explain, or acknowledge any enhancements when discussing her sentencing exposure. Rabon alleges that she would not have "signed the plea agreement, knowing the PSR could return suggesting a sentence of 15 plus years in prison. People get less time for murdering one another." (Document No. 172-1 at 23). According to Rabon, her attorney estimated her sentencing exposure to be probation to six years. Rabon maintains that had she gone to trial, she would have explained the billing codes, the grayness of billing, the struggle of medical professional's reimbursement from insurance companies, the treatment that she provided while on pretrial release

10

was medically necessary, and explained her mental illness.  She further claims that she would have explained the role of her co-defendant in her business.  (Document No. 172, p. 5 & 20).[3]  Rabon claims that that counsel, during sentencing, "stood there doing nothing, presenting no facts or evidence provided by Rabon" and was unfamiliar with her case.  (Document No. 172, at 10 & 22).

Mr. Eastepp has responded to Rabon's allegations in a sworn declaration.  (Document No. 164).  Mr. Eastepp states that he met with the Assistant United States Attorney on July 29, 2014, at which time, the Government outlined a "broad array of inculpatory evidence centered around miscoding of billings to insurers for Rabon's patients, billings for patient visits that had not in fact been held, and most troubling evidence that Rabon and Thompson had changed the identifying information, including their home addresses, of other employees of Rabon's company with the company's health care carrier (BCBS), then billed BCBS as if the employees had been patients and that BCBS had mailed the explanation of benefits to Rabon's home. These allegations were part of the fraud counts and were the support for the aggravated identity theft counts.  It was made clear that Thompson would testify and support Rabon's involvement in this fraud." (Document No. 164, p. 6).  Based on the Indictment, the fact that co-defendant Thompson was cooperating with the Government,  and the information leaned at the reverse proffer, Mr. Eastepp states that he did "not believe these counts could have been successfully defended at trial" and subsequently arranged for

---

[3] Notwithstanding Rabon's arguments that her plea was induced by her attorney's promise of a lower sentence, and that she would not have signed a plea agreement knowing the PSR could return suggesting a sentence of 15 plus years in prison based on the enhancements, she suggests that she "is not arguing against the plea agreement" and that she "does not negate her plea of guilty, because she accepts responsibility for the occurring fraud, especially with Blue Cross Blue Shield. Ms. Thompson (co-Defendant) was the office manager and billing specialist–in charge of day-to-day operations, however, Rabon was the owner whose name was on the door." (Document No. 172, p. 33, 172-1 at 1, 34).

Rabon to participate in a "reverse proffer" during which the AUSA would again go over this evidence but with Rabon being present. The reverse proffer took place on October 15, 2014. After the reverse proffer, plea negotiations ensued. Mr. Eastepp states that he explained to Rabon that the plea offered by the government, "called for the dismissal of the two readily provable aggravated identity theft counts that would have given her four additional years in prison." (Document No. 164, at 17)(emphasis in original). He further states that he discussed the sentencing guidelines and explained that Rabon's longstanding history of mental and addiction issues would be raised as a mitigating factor for sentencing variance. Attached to Mr. Eastepp's sworn declaration are email exchanges to Rabon concerning the plea. (Document No. 164, Ex. 6) and Rabon's written confirmation that she was " ready to sign plea." (Document No. 164, Ex. 6 at 9). In response to Rabon's allegation that he was not prepared for sentencing, Mr. Eastepp points to the May 21, 2015, letter to Rabon detailing the information provided to probation, including a box of medical records, treating doctor letters, and letters for patients and parents. (Document No. 164-2 at 16). He also states that he filed written objections to the PSR and a Sentencing Memorandum.

Mr. Eastepp's sworn declaration is consistent with and corroborated by the written Plea Agreement and Rearraignment hearing. For example, Rabon's written Plea Agreement states in pertinent part:

> 14. Defendant is aware that the sentence will be imposed after consideration of the *Sentencing Guidelines*, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing Judge after the court has consulted the applicable *Sentencing Guidelines*. Defendant understands and agrees the parties' positions regarding the application of the *Sentencing Guidelines* do not bind the Court, and that the sentence imposed is within the

12

discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement. (Document No. 55, ¶ 14).

In addition, Addendum B to the Plea Agreement, that Rabon signed March 20, 2015, states:

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this Agreement and I voluntarily agree to its terms. (Document No. 55 at 16).

"Solemn declarations in open court carry a presumption of verity, forming a formidable barrier in any subsequent collateral proceeding." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)(quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). Other than Rabon's allegations that counsel did not discuss the sentencing guidelines, including enhancements, there is no independent evidence that controverts Rabon's own testimony that she had discussed the Indictment and case in general with counsel, and had gone over the terms of the plea agreement, discussed the sentencing guidelines and that she understood the sentencing process. Given Rabon's sworn statements at her Rearraignment Hearing, which are entitled to the presumption of truthfulness, Rabon has not shown that her plea was not knowing and voluntary because it was induced by Mr. Eastepp's promise of a lower sentence, and that he was ineffective for failing to inform Rabon about the sentencing guidelines. The contemporaneous record further undermines Rabon's claim that counsel was not prepared for sentencing. Counsel filed written objections to the PSR and raised the objections again at sentencing. He also filed a sentencing memorandums. Upon this record, ground 2 and 14 fail as a matter of law.

13

Rabon alleges through grounds 1, 3, 4, 5, 6, 7, 11, and 12 that counsel was ineffective at sentencing by  failing to file objections to the PSR relating to the loss amount calculation, enhancements, and loss of acceptance of responsibility.  Again, the record undermines Rabons's ineffectiveness of counsel claims.

Turning to the specifics of each allegation, Rabon claims that counsel was ineffective for failing to "adequately argue" that the 1.2 actual loss amount should have been used rather than the intended loss amount of 3.9 million. Rabon contends that this resulted in an increase of 18 levels to her base offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(J).  Mr. Eastepp states in his Declaration that he, did in fact, make these arguments.  He states:

> I developed an attack on the amounts of money paid by insurance companies as overstating the harm since they were the result of negotiated payment plans present in many modern insurance policies (P.P.O. is the term).  To support this attack, I did extensive internet research on how the concerned victim insurance companies operated and reviewed Rabon's records for support.  I attached exhibits to support my argument.  (Document No. 164, at 21).

Mr. Eastepp further states that he argued that the newer fraud loss chart that became effective on November 1, 2015, should apply, and that with a loss amount of $1.3 million, the base offense level would have been increased 14 levels, and not by 16 levels.  Counsel further states that he argued that the loss amount should reflect "that the negotiated PPO rates are much lower than billed amounts, and billed amounts are never paid to the contract for PPO payments."  (Document No. 164, p. 23).

The contemporaneous record confirms and corroborates counsel's sworn declaration. The record shows that counsel made these arguments in written objections to the PSR, and re-urged them at the sentencing hearing. (Document No. 75, p. 17-26 & Transcript of Sentencing, Document No. 134, p.19-22, 25, 26-31).   The fact that the objections were overruled does not mean that counsel's

14

performance was deficient within the meaning of *Strickland. Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983).

Rabon further alleges that counsel was ineffective for failing to adequately argue against the two-level enhancement that she received for a Government health care program sustaining a loss over $1,000,000 pursuant to U.S.S.G. § 2B1.1(B)(7)(A) & (B)(i). In response, Mr. Eastepp states that he filed a written objection to the two level enhancement, and raised the objection at Sentencing. (Document No. 164, p. 22). The contemporaneous record shows that counsel, in fact, argued against the two-level enhancement, and made all the arguments urged by Rabon. (Document No. 75, p. 26 & Document No. 134, p. 33). Counsel's representation was not deficient on this issue.

Rabon further claims that counsel was ineffective for failing to adequately argue against the two-level enhancement for an offense that involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification pursuant to U.S.S.G. § 2B1.1(b)(11)(C)(i), and two-level enhancement for abusing her position of trust pursuant to U.S.S.G. § 3B1.3 when she stole the identities of employees who trusted her with their confidential information. Again, counsel states that he filed written objections to the two enhancements, and raised the objections again at sentencing.

The contemporaneous record shows that counsel filed written objections to the enhancements and raised the objections again at sentencing. The Government countered with an email showing that Rabon and co-defendant had changed the identifying information, including home addresses of her employees, to that of Rabon, and then, in turn, billed BCBS as if these employees had been patients. In the email, Rabon wrote: "This is my only option I have left. I want to bill Blue Cross-Blue Shield for speech for Mirian and Elli" and "I think that if I change their mailing addresses, they

15

would never know." (Transcript of Sentencing Hearing, Document No. 134, p. 18).  The Court found that the two enhancements were appropriate and the objections were overruled.  Counsel's representation was not deficient.

Rabon also claims that counsel was ineffective for failing to argue against the two level enhancement pursuant to § 3B1.1(c).  According to Rabon, counsel could have and should have argued that  she "was not the mastermind" and that co-Defendant Tiffany Thompson was the ring-leader. (Document No. 155, p. 10).  In response, Mr. Eastepp states that he filed written objections to the PSR based on the two level leadership role enhancement and raised the objection again at sentencing. (Document No. 164, at 20, 23).   The contemporaneous record confirms counsel's declaration the he objected in writing to the PSR.  The written objection to the PSR  sets forth the arguments that Rabon suggests should have been made. (Document No. 75, p. 13-17).  For instance, at sentencing, counsel argued that co-defendant Thompson was responsible for billing, and had access to the computer.  He further argued that Rabon was not physically present because of various mental and physical issues, which included several time in a rehab program in Belize.  (Transcript of Sentencing Hearing, Document No. 134, p. 15-17).  Again, the fact the Court was unpersuaded by the arguments, and found the enhancement appropriate, does not mean that Mr. Eastepp's performance was deficient within the meaning of *Strickland*.

Rabon, through grounds 6, 8, 12, and 13, raises ineffectiveness claims relating to the revocation of her bond. Rabon, claims that counsel was ineffective for failing to notify her that she could be arrested for violating the terms of her pretrial release, and failing to argue at the Detention Hearing, that she would have been allowed to continue on bond because she had voluntarily turned herself in, surrendered her passport and had no funds to flee.  Rabon argues that counsel "had never

16

done one of these hearings."Rabon alleges that counsel was ineffective for failing to adequately argue that she was confused about her bail conditions due to anxiety in high stress situations, and that the bond paperwork did not explicitly state that she was not to bill insurance companies. (Document No. 155, p. 22-23 & Document No. 172, p. 13-231).

Mr. Eastepp has responded to Rabon's allegations.  With respect to Rabon's suggestion that he had never handled bond revocation hearings, he writes, "I have handled conditions of release/bond revocation hearings." (Document No. 164, p. 1-2). Mr. Eastepp states that he did not represent Rabon, at her initial appearance where she was given bond. (Document No. 164, p. 1-2). Mr. Eastepp states that he was notified by the AUSA on or about January 14, 2015, that Rabon had been illegally billing insurance companies through her speech therapy practice. A Motion to Revoke was filed, and an arrest warrant issued.  Eastepp states, that he negotiated for Rabon to self-surrender, thereby giving her time to get her affairs in order.  (Document No. 164, 12-13).  Mr. Eastepp further states that both he and Rabon listened to the tape of the initial appearance, at which the undersigned Magistrate Judge stated the Rabon "should not be billing insurance companies at all but could work as a therapist." (Document No. 164, p. 14). Mr. Eastepp states that "Rabon knew she was doing something the government already had alleged was an illegal, fraudulent practice." (Document No. 164, p. 13).  As for not requesting at the Detention Hearing that Rabon be released on bond, Mr. Eastepp states that he made a tactical and strategic decision that it would be in Rabon's best interest to credit for time in custody and to argue for acceptance of responsibly and against the two level enhancement  at sentencing. (Document No. 164, p. 15, 22-23).

The contemporaneous record undermines Rabon's ineffectiveness claims relating to the violation of her pretrial release, and later, at sentencing.  The contemporaneous record shows that

Rabon was released on bond.   At the bond hearing, Rabon was instructed not to submit new insurance claims to health care providers pending resolution of the case.  The Government moved to revoke Rabon's bond, arguing that from December 1, 2013, to December 21, 2014, Rabon submitted additional claims that totaled $550,330 and received $253,674.92.   In particular, that claims had been submitted to BC/BSTX for CPT code 95526, the billing codes identified in the instant Indictment.  Rabon had billed $58,300 for 10 patients and received $16,286.70.  None of the individuals/children billed for CPT code 95526 had swallowing or eating difficulties.  The record shows that Mr. Eastepp negotiated for Rabon to surrender to the United States Marshal's service, rather than being arrested. The transcript of the January 27, 2015, Detention hearing, shows the counsel argued the points that Rabon contends should have been made, namely that she was running her business, including billing and that her Pretrial Services officer was aware that she had been billing based on bank records.  (Transcript of Detention Hearing, Document No. 130, p. 5-7).  The Court entered an Order Revoking Bond on February 4, 2015.   (Document No. 50).   The contemporaneous record further shows that counsel, in fact,  made *all* the arguments that Rabon claims should have been made concerning acceptance of responsibility and the two level enhancement for violating a court order in written objections to the PSR and at sentencing. (Document No. 75, p. 7-13 & Document No. 134, p. 3-15). The Court found the enhancement appropriate and that Rabon was not entitled to a three level adjustment for acceptance of responsibility. Upon this record, Rabon has failed to show that counsel's performance was unreasonable within the meaning of *Strickland.*

Rabon, through grounds 4, 9, 11, and 12, claims that counsel was ineffective for failing to explain and/or provide evidence of her anxiety disorder and addiction to diet pills. Rabon alleges that

18

she had obtained ten years of medical records, including a time line, that was to be turned over to Probation.  Rabon claims that the PSR failed to mention that she had been diagnosed with and treated for anxiety disorder, borderline personality disorder and addiction.  Rabon contends that had counsel called her long time psychiatrist, Dr. James Ezelle and her addiction counselor, Ms. Washington, to testify at sentencing, she would have received a lower sentence.  In all, Rabon alleges that counsel "was unable to explain the correlation between Rabon's diagnosis of Borderline Personality Disorder and its impact on her decision making" and failed to show that she was not a hard core criminal but an addict/alcoholic.  (Document No. 172, p. 37).

In response to Rabon's allegations, Mr. Eastepp states that he made tactical and strategic decision to argue that Rabon was a talented therapist but was mentally and physically ill and addicted to drugs and alcohol during the time of activities described in the Indictment.  (Document No. 164, p. 13-16, 21, 23, 25).  Mr. Eastepp further states that based on this scenario,  he concluded that the "best attack on the sentencing calculation was to use her mental/physical/addiction issues to show she had reduced responsibility."  (Document No. 164, p. 16).  Mr. Eastepp further states that he turned over to probation a box of medical records that had been provided to him by Rabon at their initial meeting and a time line of treatments and hospitalizations that she had compiled.  Further, he wrote a letter to Rabon, explaining  what he had done.  (Document No. 164, p. 16 and Ex. 9).  Mr. Eastepp further states that he obtained letters from Dr. Ezelle and Andrea Washington, relating to their respective treatments.  (Document No. 164, p. 18-19). Mr. Eastepp states that he filed written objections to the PSR and raised the objections again at sentencing.  He also filed a Sentencing Memorandum.  In response to Rabon's allegation that he was not familiar with her mental health issues, he points to email exchanges, which document his familiarity with Rabon's long standing

19

mental health issues and addiction issues.

The contemporaneous record corroborates and confirms that Mr. Eastepp's familiarity with Rabon's mental and physical/addiction history. Counsel included Rabon's history in objections to the PSR and raised the history again at sentencing. (Document No. 75, p. 26-27; Document No. 85). The PSR states, in pertinent part, that "the majority of the information provided in the Physical Condition and Mental Health Sections of the PSR was obtained from the detailed summary provided by the Defendant. The Probation Office did look through the box of documents submitted by defense counsel, which substantiated the information in the defendant's summary of her mental and emotional health." (Document No. 78, p. 4). The PSR includes the letter written by Dr. Ezelle, who had treated Rabon from May 2005 through December 2011. The transcript of the Sentencing Hearing shows that Mr. Eastepp argued for a three level reduction for acceptance of responsibility and against the two level enhancement for violating the Court Order by pointing to Rabon's longstanding issue mental health and addictions issues. (Document No. 134, p. 3-8, 34-44). Further Rabon spoke to the Court about it. (Document No. 134, p. 51-64). Counsel's performance was not deficient within the meaning of *Strickland*.

Rabon, through ground 10, alleges that counsel was in ineffective in failing to ensure that her house would not be seized by the Government. Rabon claims that Mr. Eastepp told her that the Government would not seize her home, and that had she been told otherwise, she would not have paid her mortgage, taxes, and insurance and not made repairs after the residence flooded. (Document No. 155, p. 26-27). Mr. Eastepp has responded and refutes that Rabon was not aware of notice of forfeiture. Mr. Eastepp states that written Plea Agreement that he went over with Rabon, addressed restitution and forfeiture. Mr. Eastepp states, in pertinent part, that Rabon had told him that her

house was heavily mortgaged and that he had told her that "in my experience, the government will not move forward on forfeiting an asset if there is little equity to gain... .Nonetheless, the Indictment provided notice and I showed Rabon, that the government had specifically given amended notice regarding her house during the time Mr. Berg was her counsel" and that "all iterations of the plea agreement contained forfeiture and restitution" language. (Document No. 164, p. 25-26). Mr Eastepp states that "in my experience, this same jury called to decide the forfeiture issue would have easily found that payments on her house were traceable to the fraud as her personal and business lives were commingled in the bank accounts." (Document No. 164, p. 26-27).

The contemporaneous record shows that the Indictment contained a forfeiture notice pursuant to 28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C). (Document No. 1). The written Plea Agreement informed Rabon that her residence was subject to forfeiture and she agreed not to contest forfeiture. (Document No. 55, ¶ 23-27). The Court entered an Order on September 25, 2015, directing the preliminary forfeiture of the property. (Document No. 80). The Transcript of Rabon's Rearraignment shows that Rabon acknowledged the forfeiture and confirmed her understanding. (Document No. 145, p. 10). Finally, the transcript of Rabon's Sentencing, shows that the Court ordered that the preliminary order of forfeiture of Rabon's residence that had been signed earlier, would be attached to the judgment, and that counsel requested that any equity that Rabon had in the residence be applied to her outstanding debt to the Internal Revenue Service. (Document No. 134, p. 73-74). In addition, "challenges to criminal forfeiture . . . are not cognizable under § 2255, even when they are couched as ineffectiveness claims." *see United States v. Bansal*. No. 05-193-2. 2-15 W: 11017834, at *9 (E.D. Pa. June 22, 2015). Because a challenge to the forfeiture of the residence does not go to the validity of Rabon's conviction or sentence, the claim is not cognizable under §

2255. *See United States v. Banguera*, 62 F.3d 393, at *1 (5th Cir. 1995).

Finally, due to the number of contested objections to the PSR, no ruling was made on counsel's objection to PSR ¶ 124. The Government, in it's Response to Rabon's § 2255 motion, writes, in pertinent part, that it "agrees with Rabon that the two-level enhancement under U.S.S.G. §§ 2B1.1(b)(7)(A) & (b)(i) should not have applied since Tri-care's loss was less than $1,000,000 and BCBS is not a Government health care program" and that "the Government has no objection to the Court re-sentencing Rabon without the two-level enhancement." (Document No. 169 at 23 n.6). Because the Government states that it has no objection to Rabon being re-sentenced without the two-level enhancement, the undersigned recommends that Rabon be re-sentenced.

## III.  Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED that Movant Rebecca Rabon's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 155) be DENIED.  It is further RECOMMENDED that Movant be resentenced without the two-level enhancement under U.S.S.G. §§ 2B1.1(b)(7)(A) & (b)(i).

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services*

*Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections

shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 5ᵗʰ day of _November_, 2019.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE